UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL C. GONCHOROFF,                    Case No. 11-14607

          Plaintiff,              Lawrence P. Zatkoff
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

          Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On October 19, 2011, plaintiff Michael C. Gonchoroff filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Lawrence P. Zatkoff referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claims for a period of disability and disability insurance benefits and

supplemental security income. (Dkt. 3). This matter is before the Court on cross-

motions for summary judgment (Dkt. 11, 14). Plaintiff has also filed a response to

defendant's motion for summary judgment. (Dkt. 15).

### A.   Administrative Proceedings

1

Plaintiff filed the instant claims for disability insurance benefits and supplemental security income on August 28, 2008, alleging that he was disabled on July 1, 2007.  (Dkt. 9-5, Pg ID 182-85, 188-90).  The claims were initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on January 14, 2009.  (Dkt. 9-3, Pg ID 125-28).  Plaintiff requested a hearing and on May 25, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Paul Gaughen, who considered the case *de novo*.  (Dkt. 9-2, Pg ID 93-123).  In a decision dated July 29, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 73-84).  Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits (Dkt. 9-2, Pg ID 61),[1] the Appeals Council, on August 5, 2011, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 57-61); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 54 years of age at the time of the administrative hearing. (Dkt. 9-2, Pg ID 100). Plaintiff's relevant work history included work as an assistant manager at a restaurant, a junior varsity coach, a non-emergency transport manager, and a tool and die welder. (Dkt. 9-6, Pg ID 260). In denying plaintiff's claims, defendant Commissioner considered depression, drug and alcohol addiction in claimed remission, and disorder of the vestibular system as possible bases of disability. (Dkt. 9-2, PG ID 76).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since July 1, 2007, the alleged onset date. (Dkt. 9-2, Pg ID 76). At step two, the ALJ found that plaintiff's depression, drug and alcohol addiction in claimed remission, and disorder of the vestibular system were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found that plaintiff's impairments, including the substance abuse disorders, medically equal Listings

3

12.04 and 12.09, noting that plaintiff alleges sobriety since November 2008 and that he last used opiates and cocaine in March and December 2007, respectively. (Dkt. 9-2, Pg ID 76-77).  The ALJ then found that if plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that meets or medically equals any of the Listings in the regulations.  (Dkt. 9-2, Pg ID 77-79). The ALJ determined that if plaintiff stopped the substance abuse, he would have the residual functional capacity ("RFC") to perform:

> medium work . . . except he should not work at unprotected heights, industrial hazards, climb ladders or drive dangerous industrial equipment.  He cannot work in a gambling establishment because of impulse control issues.  He can perform postural adjustments occasionally.  He can sit, stand and walk for 6 of 8 hours in a working day.  He can make simple, non-complex work related decisions.  He has the ability to do abstract reasoning but due to impulse control and lack of judgment issues, he will have difficulty adapting to frequent and significant changes in the work routine.  He is able to handle simple changes.  He will have difficulty performing independent work without the benefit of a supervisor and pre-scheduling.  In addition, frequent traveling as part of the job on common carriers would be problematic.  Due to depression, he will have difficulty with higher-level social interaction but perfunctory social interaction in a drug and alcohol free work environment can be handled.

(Dkt. 9-2, Pg ID 79).  At step four, the ALJ found that if plaintiff stopped the substance abuse, he would be unable to perform his past relevant work.  (Dkt. 9-2, Pg ID 82-83).  At step five, the ALJ denied plaintiff benefits because, if plaintiff

stopped the substance abuse, he could perform a significant number of jobs available in the national economy.  (Dkt. 9-2, Pg ID 83-84).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ improperly found that plaintiff is actively and currently using drugs and alcohol and that this active substance abuse is disabling him.  Plaintiff explained that the ALJ relied on a November 20, 2008, psychiatric evaluation report from Marisol Timtiman, MD, a psychiatrist at Community Network Services, where she stated plaintiff reported a "long history of depression and substance abuse," that he was "[s]ober since November 2008," his "[l]ast cocaine use was December 2007"[2] and that he "last used [opiates in] March 2007." (Dkt. 9-2, Pg ID 76; Dkt. 9-7, Pg ID 306-07).  Plaintiff reported to Dr. Timtiman that in November 2007 he was "drinking regularly and heavily," felt hopeless and desperate, and decided to rob a bank.  (Dkt. 9-7, Pg ID 306-08).  Plaintiff was subsequently identified and arrested, but about two weeks before he was convicted, he reported that he "overdosed" on his prescribed Cymbalta as a "suicidal attempt."  *Id.*  Dr. Timtiman observed on examination that plaintiff was calm and cooperative, made good eye contact, his thought process was "circumstantial, mostly overly inclusive," he had a depressed mood, appropriate affect, good recall,

---

[2]Plaintiff points out that Dr. Timtiman's December 2007 date is in error because plaintiff was incarcerated from November 2007 through August 2008. (Dkt. 9-5, Pg ID 181).

and fair insight but poor judgment.  *Id.*  Dr. Timtiman diagnosed plaintiff with

Depressive Disorder NEC, Impulse Control Disorder NOS, alcohol and cocaine

dependence *in remission*, Personality Disorder NOS, and prescribed Geodon and

Prozac.  (Dkt. 9-7, Pg ID 308).  Dr. Timtiman noted that plaintiff "has had a trial

of several antidepressants with minimal effect" and that she "[w]ill encourage

[plaintiff] to attend AA/NA to maintain sobriety."   *Id.*

Plaintiff states that the record evidence does not support the ALJ's

conclusion that plaintiff was actively abusing drugs and alcohol, and that his

treating physicians have in fact diagnosed him with "Alcoh-Remission, Cocaine

Dependence-Remission," and none have described or diagnosed an active or

ongoing alcohol or substance abuse situation.[3]  Plaintiff was treated at the Auro

Medical Center from January to October 2007 for complaints of depression, low

energy, and feelings of hopelessness and helplessness.  (Dkt. 9-7, Pg ID 286-94).

Plaintiff continued to receive psychiatric care for Major Depressive Disorder while

he was incarcerated, from November 2007 through August 2008, through the

Easter Seals Jail Services.  (Dkt. 9-7, Pg ID 297, 336-48; Dkt. 9-2, Pg ID 81).

Plaintiff was diagnosed with Major depression and antisocial personality disorder

---

[3]The record shows that plaintiff was voluntarily admitted to the Carlyle
Center on February 2, 1990 because he was potentially dangerous to himself and
others.  (Dkt. 9-7, Pg ID 266-68).  Plaintiff was discharged on February 16, 1990
and was diagnosed with Major depression, recurrent.  *Id.*

and prescribed Prozac for his depression. *Id.*

The record, though admittedly sparse, indicates that plaintiff continued to receive some mental health treatment at Community Network Services following his release from jail in August 2008. (Dkt. 9-7, PG ID 356-66, 368). Plaintiff complained in November 2009 of hearing his name called when no one is around, having problems with short-term memory, fatigue, apathy, and sadness, rated his depression as 7 on a 10 point scale, but denied any suicidal or homicidal ideation, plan or intent. *Id.* Plaintiff reported that he last used alcohol in November 2008, and it was noted that plaintiff is currently in recovery. *Id.*

On January 8, 2009, Leonard C. Balunas, Ph.D., completed a Mental Residual Functional Capacity Assessment of plaintiff in which he found that plaintiff was moderately limited in his abilities to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods of time, and concluded that plaintiff is "able to perform unskilled work involving 1 and 2 step instructions with limited need for sustained concentration." (Dkt. 9-7, Pg ID 317-19). Dr. Balunas opined that during the July 2007 through January 2009 time period, plaintiff had medically determinable impairments of depressive disorder, NOS, personality disorder, NOS; impulse control disorder, NOS, and "[a]lcohol and cocaine dependence in remission," was mildly limited in restrictions of daily living and difficulties in

7

maintaining social functioning, moderately limited in difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation. (Dkt. 9-7, Pg ID 321- 32). Dr. Balunas noted that plaintiff maintains his hygiene, attends bible study and church services twice a week, has no problem making meals, performing household chores or handling finances, but complains of sleep problems due to restlessness and nervous energy and depression. (Dkt. 9-7, Pg ID 333). Dr. Balunas concluded that plaintiff's activities show him to be social with no real recent documentation of depression and no sign of concentration difficulties or nervous energy or psychosis, and that plaintiff's "[c]redibility is highly suspect." *Id.*

Leonard Swistak, Ph.D., performed a consultative examination of plaintiff on April 19, 2010. (Dkt. 9-7, Pg ID 350-54). Dr. Swistak noted that plaintiff "readily acknowledged abusing alcohol and drugs throughout much of his adult life," but that "he has ceased using alcohol in 2007 and has not used any drugs since 2006," and that he attended an outpatient substance abuse program at Maplegrove for approximately three years. *Id.* Dr. Swistak observed on examination that plaintiff's affect and mood were mildly depressed, although plaintiff was friendly and cooperative. *Id.* He was alert, oriented and appeared both anxious and depressed and expressed a strong sense of despair, hopelessness and helplessness. *Id.* Plaintiff had difficulty sustaining his attention, demonstrated

8

intact memory, appropriate judgment and intact reasoning, and reported no delusions or hallucinations. *Id.* Dr. Swistak diagnosed plaintiff with Major Depressive Disorder - Recurrent, Alcohol Dependence - Continuous - In Remission, and Poly-substance Dependence - in Remission, and Antisocial Personality disorder, and opined that plaintiff is "emotionally labile and experiences significant periods of depression and anxiety" and his symptoms "are likely to have a dramatic impact on his cognitive and behavioral functioning and to have a rather devastating impact on his ability to function both within a work type situation as well as his daily life." *Id.* Dr. Swistak concluded that plaintiff "is not capable of working and it is apparent that his depressive disorder is chronic and while he does experience period[s] of diminished depressive symptoms such symptoms are not likely to be diminished to the point that he will be able to gain or maintain employment" because Plaintiff's "difficulties with attention/concentration and memory make it extremely difficult for him to efficiently process information and to recall key facts when later required to do so," and "[h]is depression will likely have a[n] extremely negative impact on his ability to learn new information and to recall the sequential nature of both physical and cognitive tasks." *Id.*

Therefore, Dr. Balunas, the DDS consultant whose report the ALJ placed "significant weight" found that plaintiff's alcohol and cocaine dependence is "in remission." (Dkt. 9-7, Pg ID 329). Similarly, Dr. Swistak, arrived at the same

conclusion.  (Dkt. 9-7, Pg ID 354).  Plaintiff argues that the ALJ is not free to simply conclude that plaintiff continues to engage in ongoing alcohol or substance abuse absent any evidence supporting that conclusion.  Rather, according to plaintiff, because the ALJ already found that plaintiff's impairments medically equal the Listings, and thus plaintiff is disabled, and because the ALJ's finding that plaintiff would not be disabled if he "stopped the substance abuse" is not supported by substantial evidence, and the record requires a determination of disability.

Plaintiff also claims that the ALJ failed to defer to plaintiff's treating physicians, or explain why their opinions are not entitled to controlling weight, but instead placed significant weight on the opinion of the DDS consulting psychologist, Dr. Balunas.  Dr. Balunas never examined plaintiff and had access to only a limited portion of plaintiff's medical records.  Plaintiff argues that the ALJ improperly referred to Dr. Balunas as a physician and gave Dr. Balunas's findings "significant weight" while at the same time giving the findings of examining consultant, Dr. Swistak, little weight, and the findings and conclusions of the treating psychiatrists, Yatinder Singhal (Dkt. 9-7, Pg ID 284-94) and Dr. Timtiman (Dkt. 9-7, Pg ID 306-08) are not discussed or are only referenced inaccurately with regard to plaintiff's drug and alcohol use dates.  Plaintiff also argues that the ALJ incorrectly concluded that Dr. Balunas suggested that plaintiff was engaging in possible malingering or misrepresentation because Dr. Balunas never made such a

10

statement, but only opined, based solely on a review of records, that plaintiff's "credibility is highly suspect." (Dkt. 9-2, Pg ID 82; Dkt. 9-7, Pg ID 333).  Further, plaintiff himself offered into evidence his struggles with drugs and alcohol and thus the ALJ's claim of "misrepresentation" does not make sense.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that ALJ properly found that plaintiff would not be disabled if he stopped the substance abuse.  The Commissioner contends that the ALJ was not required to accept plaintiff's allegations of sobriety at face value, particularly given plaintiff's inconsistent testimony about his use of drugs and alcohol and the lack of any consistent treatment for depression and substance abuse.  The Commissioner further contends that the ALJ correctly afforded significant weight to Dr. Balunas's assessment, which considered plaintiff's treatment history.  Further, the ALJ did not err by not discussing the reports of Drs. Lazar, Singhal and Timtiman in detail because those physicians did not offer opinions as to plaintiff's work related functional limitations or state that plaintiff was disabled by depression.  According to the Commissioner, only Dr. Balunas provided an assessment of plaintiff's likely mental ability to work.  The Commissioner further argues that plaintiff did not have a consistent and ongoing treatment relationship with Drs. Lazar, Singhal and Timtiman, stating that a claimant's failure to seek medical treatment over an extended period of time is

often a factor to be considered against the claimant's assertion of a disabling condition, citing *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004); Social Security Ruling ("SSR") 96-7p.  The Commissioner argues that plaintiff's sparse treatment record did not suggest that plaintiff was significantly limited by depression.  Finally, contrary to plaintiff's argument, Dr. Swistak's opinion should not be given controlling weight because Dr. Swistak was not a treating physician but only a one-time consultative psychologist.

### D.  Plaintiff's Response to the Commissioners Motion for Summary Judgment

Plaintiff re-argues that there is no evidentiary support in the record for the ALJ's conclusion that plaintiff had an active or ongoing alcohol and substance abuse condition that disables him.  Plaintiff further contends that the Commissioner is wrong that Drs. Singhal, Lazar and Timtiman should not be considered plaintiff's treating doctors.  Plaintiff explains that the record shows that these doctors are all "connected" to the same organization, Community Mental Health/Easter Seals, and are plaintiff's treating physicians in every sense of the word, and that the Commissioner should not be permitted to exploit the fact that doctors at public mental health organizations have a higher turnover rate than those at private pay health care clinics.

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

13

evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a

14

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

**B.      Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

16

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

17

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.    Analysis and Conclusions

In 1996, the Contract with America Advancement Act ("CAAA") amended the Social Security Act, providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42

18

U.S.C. § 423(d)(2)(C).  Following these amendments, the Commissioner

promulgated regulations governing disability claims that involve substance abuse:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.  In other words, if the ALJ completes the five-step process outlined above and determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct a second five-step analysis in order to determine if the claimant would still be disabled without the substance abuse.  *See id.*  The claimant has the burden of proving that substance abuse is not a factor material to the determination of disability.  *Trent v. Astrue*, 2011 WL 841538, at *3 (N.D. Ohio Mar. 8, 2011) (citing *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)).  The ALJ, however, retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Beatty v. Comm'r of Soc. Sec.*, 2011 WL 4407557, at *6 (E.D. Mich. Sept. 2, 2011) (citation omitted), *adopted by* 2011 WL 4406331 (E.D. Mich. Sept. 22, 2011).  "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow."  *Id.* (citation omitted).

The ALJ here determined, at step three of the sequential evaluation, that plaintiff's mental impairments, "including the substance use disorders," medically equal Listings 12.04 and 12.09.[4]  (Dkt. 9-2, Pg ID 76).  He found that the

---

[4]Listing 12.09, Substance Addiction Disorders, requires the claimant to show "behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.  The required level of severity in any of the following . . . are satisfied."  The ALJ is directed to evaluate nine disorders according to other Listings, including Listing 12.04, depressive

"paragraph A" criteria are satisfied because plaintiff "has medically documented

persistence, either continuous or intermittent of a depressive syndrome

characterized by at least four of the following: depressed mood, excessive sleeping,

difficulty concentrating, excessive worrying, social isolation, feelings of

worthlessness, and a suicide attempt." *Id.* The ALJ then found that the "paragraph

B" criteria were satisfied, concluding that plaintiff has a moderate restriction in the

activities of daily living, marked difficulties in social functioning and

concentration, persistence or pace, and three episodes of decompensation–a history

of alcohol and drug (cocaine) abuse, suicide attempt in 2007, and significant

alteration in anti-depressant medications. (Dkt. 9-2, Pg ID 76-77). In support of

these findings, the ALJ cited the Disability Function Report plaintiff completed on

September 21, 2008 (Dkt. 9-6, Pg ID 239-46), plaintiff's "testimony" in general,

and the "evidence of record." (Dkt. 9-2, Pg ID 76-77). The ALJ also found that

the residual functional capacity assessments completed by the State Disability

Determination Services "physicians" "did not adequately consider the combined

effect of the impairments, particularly the effect of the drug and alcohol abuse,"

but that those opinions do deserve "some weight." *Id.*

The ALJ then continued his analysis pursuant to 20 C.F.R. §§ 404.1535,

416.935, and found that if plaintiff *stopped* the substance abuse, he would have

---

syndrome. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.09.

moderate restrictions in the activities of daily living and social functioning, mild

difficulties with concentration, persistence or pace, and no episodes of

decompensation, and thus plaintiff would not have an impairment or combination

of impairments that meet or medically equal a Listing.  (Dkt. 9-2, Pg ID 78-79).  In

support of this subsequent finding, the ALJ again cited the September 21, 2008

Disability Function Report, plaintiff's testimony and "the medical evidence of

record."  *Id.*

The ALJ's analysis is flawed in several respects.  First, the ALJ has failed to

cite to any evidence in the record that plaintiff continues to use or abuse alcohol or

drugs past his admitted November 2008 date.   Rather, the only evidence in the

record addressing plaintiff's substance abuse indicates that his alcohol and

substance abuse dependency *have* stopped–at least as of November 2008.  All

reports, including that of Dr. Balunas, whose opinion the ALJ gave "significant

weight," state that plaintiff's alcohol and drug dependence were "in remission" and

that plaintiff was "[s]ober since November 2008," his "[l]ast cocaine use was

December 2007"[5] and that he "last used [opiates in] March 2007."  (Dkt. 9-7, Pg

ID 306-07, 321-32, 333, 350-54, 365).  There is no evidence in the record that

plaintiff's alcohol or substance abuse was current or ongoing past November 2008,

---

[5]Plaintiff points out that Dr. Timtiman's December 2007 date is in error
because plaintiff was incarcerated from November 2007 through August 2008.
(Dkt. 9-5, Pg ID 181).

and the ALJ failed to cite any record evidence in support of his opinion otherwise.

Thus, the ALJ's opinion is not supported by substantial evidence, and this matter

should be remanded.  *See Lang v. Barnhart*, 2006 WL 3858579, at *6 (W.D. Pa.

Dec. 6, 2006) ("[I]f there were evidence that the claimant used alcohol in the past

but was no longer doing so . . . the ALJ could conclude that alcohol use was not a

contributing factor.")*; see also Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th

Cir. 2003) ("Only after the ALJ has made an initial determination 1) that [the

claimant] is disabled, 2) *that drug or alcohol use is a concern*, and 3) that

substantial evidence on the record shows what limitations would remain in the

absence of alcoholism or drug addition, may he then reach a conclusion on whether

[the claimant's] substance use disorders are a continuing factor material to the

determination of disability") (emphasis added).

Second, even assuming there was evidence in the record of plaintiff's

ongoing substance use, remand is necessary because the ALJ's opinion is

confusing and needs clarification in that the ALJ seemingly relies on the same

evidence–the Disability Function Report, plaintiff's testimony and the "medical

evidence of record"–in reaching *both* his initial finding that plaintiff's impairments

did medically equal Listings 12.04 and 12.09, *and* his subsequent finding that

plaintiff would not meet or medically equal a Listing if he "stopped the substance

abuse."   The ALJ does not explain how this same evidence supports his two

contradictory findings, and it is therefore unclear how the ALJ concluded that plaintiff's substance use was a material contributing factor to plaintiff's mental impairments. Without further findings or a clearer explanation by the ALJ, the undersigned is unable to ascertain the ALJ's rationale for the finding that substance abuse is material to plaintiff's disability in relation to the evidence in the record and remand is required.

Third, there is no medical opinion evidence in the record of the effect of plaintiff's alleged alcohol and substance abuse on his depression. Plaintiff had mental health treatment over the course of several years through mental health programs. In addition, plaintiff had a consultative examination performed in 2010. Unfortunately, none of these treating mental health professionals offered any specific opinions regarding the effect of alcohol or substance use on plaintiff's ability to work (presumably because those professionals noted plaintiff's alcohol and substance abuse as "in remission"). Further, the ALJ stated that "physicians employed by the State Disability Determination Services did not adequately consider the combined effect of the impairments, particularly the effect of the drug and alcohol abuse." (Dkt. 9-2, Pg ID 77). Accordingly, there is no medical opinion evidence on the effect of plaintiff's alleged substance abuse on his mental impairments and the ALJ is not qualified to make this determination because it is well settled that "[t]he impact of alcohol [and drug use] on a mental condition is

beyond the scope of [the ALJ's] area of expertise." *See Trent*, 2011 WL 841538, at *5-6 ("The impact of alcohol on a mental condition is beyond the scope of the ALJ's area of expertise and an ALJ may not assume that depressive symptoms would improve with ongoing treatment and stopping the consumption of alcohol."); *Mathious v. Barnhart*, 490 F. Supp.2d 833, 847 n.14 (E.D. Mich. 2007) ("The ALJ is not a medical doctor . . . and is therefore not qualified to determine whether someone's functional limitations and IQ scores are the product of alcohol or drug usage without some competent evidence or more thorough explanation."). In the view of the undersigned, this is where the ALJ should have contacted the mental health professionals who treated and examined plaintiff because this critical issue was undeveloped. *See Leigh v. Comm'r of Soc. Sec.*, 2011 WL 2746219, at *9 (E.D. Mich. June 21, 2009) (remanding the matter to the Commissioner for determination as to the limitations on plaintiff's ability to work during periods of sobriety or the extent of improvement of his symptoms during such periods), *adopted by* 2011 WL 2746199 (E.D. Mich. July 14, 2011).  The ALJ's decision lacks substantial support for his finding that drugs and alcohol continue to be material to plaintiff's claimed disability.  *See Mathious*, 490 F. Supp.2d at 848.

    Because the ALJ failed to follow the controlling regulations, this matter should be remanded for further proceedings, including further development of the record to determine the effect of substance abuse on plaintiff's potential disability.

25

*See Sawdy v. Comm'r of Soc. Sec.*, 436 Fed. Appx. 551, 553 (6th Cir. 2011) ("Even when 'substantial evidence otherwise supports the [ALJ's] decision,' we must remand if 'the agency failed to follow its own procedural regulation.'") (citing *Wilson*, 378 F.3d at 544). Given these conclusions, the treating physicians' opinions and the plaintiff's credibility will necessarily require reevaluation.

Further, the undersigned notes that while plaintiff alleges a disability onset date of July 1, 2007, (Dkt. 9-5, Pg ID 182-85, 188-90), the record demonstrates that plaintiff was incarcerated from November 9, 2007 through August 12, 2008. (Dkt. 9-5, Pg ID 181). Plaintiff is not eligible to receive social security benefits for any months he was confined to jail or prison. *See* 42 U.S.C. §§ 402(x)(1)(A), 1382(e)(1)(A); 20 C.F.R. §§ 404.468, 416.1325. The ALJ should take this into consideration on remand.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further consideration.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 5, 2013                                    s/Michael Hluchaniuk
                                                      Michael Hluchaniuk
                                                      United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on March 5, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Phillip R. Fabrizio, Vanessa Miree Mays, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood<br>
Case Manager<br>
(810) 341-7850<br>
tammy_hallwood@mied.uscourts.gov
